IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

JAKTELY WHITLEY ) Case No. 01 C 4805
    Plaintiff ) Judge Gottschall
vs. )
)
ERNESTO VELASCO, Executive Director )
Cook County Department of Corrections )
In his Official Capacity, et. al. )
    Defendants )

FILED JUL 09 2004 MICHAEL W. DOBBINS CLERK, U.S. DISTRICT COURT

DOCKETED JUL 16 2004

**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

NOW COMES Plaintiff, JAKTELY WHITLEY, by and through counsel, and in opposition to defendants' Motion for Summary Judgment, states as follows:

**MOTION FOR SUMMARY JUDGMENT BY CCDC DEFENDANTS**

The CCDC defendants argue that they are entitled to summary judgment as a matter of law, because plaintiff cannot show that he had a serious medical need, and plaintiff can not show that they acted with deliberate indifference.

Plaintiff submits that based upon the totality of facts, the CCDC defendants' motion for summary judgment should be denied, as a matter of law.

**Serious dental/medical need**

Plaintiff did have a serious dental/medical need at all stages of this case, to wit:

1. From at least July 5, 1999 to July 8, 1999, plaintiff complained of pain and made repeated request to be taken to see a dentist. (Pl.'s Additional Statement of Facts 43-49)

2. On July 8, 1999 plaintiff was taken to Cermak. Plaintiff was seen by Dr.

1



Guthrie. Dr. Guthrie gave plaintiff two injections of Novocain and attempted to remove a back tooth. Finally. Dr. Guthrie told plaintiff the tooth was "hot" and he could not extracted it. Plaintiff was sent back to the tier with a prescription for motrins, but no antibiotics. (Pl.'s Additional Statement of Facts 53)

3. Plaintiff's pain increased after Dr. Guthrie unsuccessfully attempted to extract his tooth on July 8, 1999. Plaintiff began to experience headaches, his face and head were swollen, his vision became blurred, pus was coming out of his mouth, and he could not eat or sleep. Plaintiff started wearing a towel around his face, in attempt to alleviate the pain and get attention. (Pl.'s Additional Statement of Facts 54, 55)

4. On July 15, 1999 plaintiff was taken to Cermak. Plaintiff was in excruciating pain and had a towel on his face when he was taken to Cermak on July 15, 1999. Plaintiff wanted the tooth removed. However, when plaintiff saw that the dentist was Dr. Guthrie, again, he refused to allow Dr. Guthrie to work on his mouth. Because, as was stated by plaintiff, "he had already messed me up." Plaintiff was sent back to the tier with a prescription for motrins and penicillin, but with no referral for an alternative medical provider, that day. (Pl.'s Additional Statement of Facts 56)

5. Plaintiff's pain increased. Plaintiff continued to be unable to eat or sleep. Plaintiff had a fever, his body shivered and trembled. Ricardo Ricks, plaintiff's cellmate contacted plaintiff's attorney, Earl Washington. Attorney Washington contacted the CCDC and requested medical attention for plaintiff. (Pl.'s Additional Statement of Facts 59.)

6. Following attorney Washington's telephone call, plaintiff was taken on July 22, 1999 to Cermak. Plaintiff's medical condition was designated as "emergency life

2

threatening." Plaintiff was referred to Cook County Hospital, in need of " IV antibiotics." (Pl.'s Additional Statement of Material Facts 60, Pl.'s Ex. 3 P. 7 upper right corner).

7. After plaintiff's hospitalization at Cook County Hospital ( from 7/22/99 to 8/5/99) he was returned to CCDC. Plaintiff complained that he was experiencing continuous pain to his face and head. Plaintiff also complained that he also was experiencing blurred vision and severe headaches. (Pl.'s Additional Statement of Material Facts 63 ) Plaintiff followed up with medical care and treatment at Cook County Hospital. after he was released on bond August 19, 1999 (Pl.'s Dep. Tr. 35-36)

Objectively, a serious medical need is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity of a doctor's attention." Further, serious medical needs are far-more encompassing than those that are life threatening. Gutierrez v. Peters, 111 F. 3d 1364, 1371-1373 (7th Cir. 1997)

The Seventh Circuit recognizes the following to be indications of a serious medical need: 1) where failure to treat the condition could result in further significant injury or the unnecessary and wanton infliction of pain; 2) existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; 3) presence of a medical condition that significantly affects an individual's daily activities; 4) the existence of chronic and substantial pain. Gutierrez v. Peters, 111 F. 3d 1364, 1373 (7th Cir. 1997)

Importantly, the Seventh Circuit recognizes that "dental care is one of the most important medical needs of inmates." Wynn v. Southward, 251 F. 3d 588, 593 (7th Cir.

2001) Inadequate dental care constitutes a serious medical need. Chance v. Armstrong, 143 F. 3d 698, 702-3 ( 2nd Cir. 1998) A serious dental condition existed where plaintiff suffered from broken teeth, bleeding and infected gums, pain and weight loss due to an inability to eat. Hunt v. Dental Dept., 865 F. 2d 198, 200-201 (9th Cir. 1988)

Contrary to defendants' claim, plaintiff submits that a reasonable jury could find that plaintiff had a serious dental/medical need at all time periods stated above.

**Deliberate Indifference**

Deliberate indifference requires "a state of mind more blameworthy than negligence," but something less than purposeful or knowing conduct. A prison official exhibits deliberate indifference when the official actually "knows of and disregards" a prisoner's serious medical needs. The appropriate inquiry is "whether prison officials, acting with deliberate indifference, exposed a prisoner to a sufficiently substantial risk of serious damage to his future health." A prison official's knowledge may be established by circumstantial evidence: a fact finder may conclude that the official knew of a prisoner's serious medical needs based on the fact that the needs were obvious. Farmer v. Brennan 511 U.S. 825 (1995) The claimant must show that the prison official acted with reckless disregard toward the serious medical need by "inaction or woefully inadequate action." Reed v. McBride, 178 F. 3d 849, 854 (7th Cir. 1999)

Plaintiff submits that the following shows that the defendants acted with deliberate indifference to plaintiff's serious dental/medical need:

**Officer Hill**[1]

---

[1] See Plaintiff's Response to CCDC Statement of Facts 22 and 25

4

On or about July 5, 1999 Plaintiff told correctional officer, Hill that he had a toothache and needed to see a dentist. Officer Hill told plaintiff he needed to make a written request and put it in the request box. Plaintiff did so. Plaintiff complained over the course of days that he had not been taken to the dentist and that he was in pain. When Plaintiff told officer Hill that he still had not been taken to the dentist, Hill told him, "there's nothing I can do about it." At some point Hill took plaintiff to the dispensary. Plaintiff was given ibuprofen and taken back to the tier. ( Pl.'s Statement of Material Facts 43-45, 47) After the attempted extraction, plaintiff's pain was excruciating. Plaintiff began wearing a white towel around his face in attempt to alleviate the pain and to get attention. Plaintiff asked Officer Hill to take him to the doctor. Plaintiff was not taken to a doctor. Instead he was given ibuprofens. (Pl's Additional Statement of Material Facts 58)

Plaintiff had personal contact with Officer Hill, at which time he told her he was in pain. Plaintiff presented himself on one occasion with a white towel around his face, asking Hill to take him to the doctor. Plaintiff never took plaintiff to the dental/medical facility.

Obviously, Hill observed something about plaintiff that led her to believe plaintiff was in pain, because she took him to the dispensary to get pain pills. However, merely taking plaintiff for pain pills was inadequate action. Especially, in light of the fact that plaintiff's pain was due to an infection, which ultimately resulted in him having to undergo two (2) surgeries, removal of four (4) teeth., and insertion of metal. ( Pl.'s Ex. 1) Chavez v. Cady, 207 F. 3d 901 (7th Cir. 2000)

Again in August 1999, plaintiff was experiencing excruciating pain, and

5

complained to Payton that he was having blurred vision and severe headaches. Plaintiff asked Payton to take him to the doctor. Payton refused to do so. (Pl.'s Additional Statement of Material Facts 63)

Further, based upon General Directive 12.5 Sections 2,3 & 4. Hill had the authority to take plaintiff for dental/medical attention, but did not. (Pl.'s Ex. 7) Hill's inaction was deliberate indifference.

**Officer Vincent Payton**

When Plaintiff told defendant Correctional Officer **Payton**, that he still had not been taken to the dentist, **Payton** told him "ain't nothing I can do about it until they call you." At some point Payton (with Hill) took plaintiff to the dispensary. Plaintiff was given ibuprofen and taken back to the tier. After the attempted extraction, plaintiff's pain was excruciating. Plaintiff began wearing a white towel around his face in attempt to alleviate the pain and to get attention. Plaintiff asked Officer Payton to take him to the doctor. Plaintiff was not taken to a doctor. Instead he was given ibuprofens. (Pl's Additional Statement of Material Facts 46, 47,58)

Obviously, Payton observed something about plaintiff that led him to believe plaintiff was in pain, because he took plaintiff to the dispensary to get some pain pills. However, merely taking plaintiff for pain pills was inadequate. Especially, in light of the fact that plaintiff's pain was due to an infection, which ultimately resulted in him having to undergo two (2) surgeries, removal of four (4) teeth., and insertion of metal. ( Pl.'s Ex. 1) Chavez v. Cady, 207 F. 3d 901 (7th Cir. 2000)

On July 15, 1999, Payton took Plaintiff to Cermak. At that time, Plaintiff had a towel wrapped around his face, and was in such pain that he could barely talk.

6

(Response to CCDC Statement of Facts 26) Again in August 1999, plaintiff was experiencing excruciating pain, and complained to Payton that he was having blurred vision and severe headaches. Plaintiff asked Payton to take him to the doctor. Payton refused to do so. (Pl.'s Additional Statement of Material Facts 63)

Plaintiff had personal contact with Payton at the times he made the requests. . Pursuant to General Directive 12.5 Sections 2,3 &4, Payton had authority to take plaintiff for dental/medical attention, but did not. (Pl.'s Ex. 7) Payton's inaction was deliberate indifference.

### Sgt. Brenda Latham

At the time plaintiff spoke to Supervisor **Sgt Latham**, he told her about his condition (painful toothache) and told her that he needed medical attention. In response, Sgt Latham told plaintiff "talk to your tier officer and have your tier officer to contact me." (Pl's Additional Statement of Material Facts 50)

Plaintiff had personal contact with Sgt. Latham. Pursuant to General Directive 12.5 Sections 2,3 &4, Sgt. Latham had authority to take plaintiff for dental/medical attention, but did not. (Pl.'s Ex. 7) Sgt. Latham's inaction was deliberate indifference.

### Sgt. Encarnacion Roldan

Plaintiff told Supervisor Sgt. **Roldan**, " I need some medical attention." . Plaintiff further, complained to **Roldan** that he was having blurred vision and severe headaches. (Pl.'s Dep. Tr. 72.79-80) In response, **Sgt. Roldan**, told plaintiff, "okay, well, I'll get back with you". However Sgt. **Roldan** just left. Again in August 1999, plaintiff was experiencing excruciating pain, and complained to Payton that he was having blurred vision and severe headaches. Plaintiff asked Payton to take him to the

7

doctor. Payton refused to do so. (Pl.'s Additional Statement of Material Facts 50, 63)

Plaintiff had personal contact with Roldan at the time he made the requests. Pursuant to General Directive 12.5 Sections 2,3 &4, Sgt. Roldan had authority to take plaintiff for dental/medical attention, but did not. (Pl.'s Ex. 7) Sgt. Roldan's inaction was deliberate indifference.

### Sgt. Rosenski[2] (sic) and Lt. Joseph Hurd

Plaintiff told Supervisors Sgt. **Rosenski** (sic) and Ltd. **Hurd** that he was in excruciating pain and needed to see a dentist. At the time plaintiff told this to Rosenski (sic) and Hurd, plaintiff had a towel on his face and was almost unable to talk. **Sgt. Rosenski** (sic) asked plaintiff if he had filled out a medical request, and told plaintiff he would see what he could do. Nothing was done **Lt. Hurd** also asked plaintiff if he had put in a medical request. **Lt. Hurd** told plaintiff he was " going to speak to the sergeant and get with you". But plaintiff did not hear back from Lt. Hurd (Pl's Additional Statement of Material Facts 51)

Plaintiff had personal contact with Rosenski sic) and Hurd at the time he made the requests. Pursuant to General Directive 12.5 Sections 2,3 &4, Sgts. Rosenski (sic) and Hurd had authority to take plaintiff for dental/medical attention. but did not. (Pl.'s Ex. 7) Sgts. Rosenski's (sic) and Hurd's inaction was deliberate indifference.

### Officers Michael Desena and EddieGonzalez

When Plaintiff told Officers **Desena** and **Gonzalez,** that he still had not been taken to the dentist, they told him, "they couldn't do anything," and to " put the

---

[2] See Response to CCDC Statement of Facts 22.

requests in the box." (Pl's Additional Statement of Material Facts 48)

After Dr. Guthrie tried to extract his tooth, plaintiff was in continuous pain and pus was running from his mouth. Plaintiff was unable to eat or sleep. Plaintiff made requests to Officers **Desena and Gonzalez** that he be taken to see a doctor. Plaintiff complained of blurred vision and pain in his head and neck. At the time of telling this to Desena and Gonzalez, plaintiff's jaws had locked and he was barely able to speak. Plaintiff's face was swollen and he was in excruciating pain. Neither Desena nor Gonzalez took plaintiff for medical care. (Pl's Additional Statement of Material Facts 54-55)

Plaintiff had personal contact with Desena and Gonzalez at the time he made the requests. Pursuant to General Directive 12.5 Sections 2,3 &4, Desena and Gonzalez had authority to take plaintiff for dental/medical attention, but did not. (Pl.'s Ex. 7) Desena's and Gonzalez's inaction was deliberate indifference.

**Officers Rekeenya Brown and Judith Brown**

In the early part of July, plaintiff told **R. Brown** that he still had not been called for the dentist. When plaintiff made his original request to see a dentist he was in pain. Plaintiff was in pain when he told **R. Brown** that he still had not been called to see the dentist. **Brown told** Plaintiff to put another request in the box. ( Pl.'s Additional Statement of Facts 48)

Plaintiff had personal contact with R. Brown at the time he made the requests. Pursuant to General Directive 12.5 Sections 2,3 &4, R. Brown had authority to take plaintiff for dental/medical attention, but did not. (Pl.'s Ex. 7) R. Brown's inaction was deliberate indifference.

9

Likewise, based upon plaintiff's obvious indications that he was in serious need of dental/medical attention, J. Brown, pursuant to General Directive 12.5 Sections 2, 3 & 4, had authority to take plaintiff for dental/medical attention, but did not. J. Brown's inaction was deliberate indifference.

**Plaintiff had obvious indications of serious dental/medical need**

That plaintiff had obvious indications of a serious need for dental/medical attention and treatment is corroborated by log entries from the CCDC and from the medical history part of the record from Cook County Hospital. Log entries for Division 5 from July 17-20, 1999 stated that plaintiff was observed with a "noticeable swollen head", "shivering" and "unable to walk". It was noted that plaintiff complained of pain, swollen face, fever, and body tremors. (Pl.'s Additional Statement of Facts, Pl.'s Ex. 4 )

The medical history from Cook County Hospital, showed that when plaintiff was admitted July 22, 1999, it was stated that patient had been complaining of two (2) weeks left facial pain, swelling, and fever. Patient noted to have obvious (L) temporal facial swelling and trismus (lockjaw). (Pl.'s Additional Statement of Facts 61, Pl.'s Ex.)

The facts show that the deliberate indifference to the serious dental/medical need of plaintiff resulted in needless pain and suffering which is " repugnant to the conscience of mankind" and offensive to "evolving standards of decency." Estelle v. Gamble, 429 U.S. 97, 106.

**Affirmative Link between acts of defendants and plaintiff's injuries**

Plaintiff had to undergo two (2) surgeries, extraction of four (4) teeth , and insertion of a metal plate, as a result of a progressive infection that started in his mouth

10

and spread to his head. (Pl.'s Ex. 1) The infection progressed from July 5, 1999 to July 22, 1999, before plaintiff received adequate dental/medical attention and treatment.

The refusal/delay in providing plaintiff with adequate dental/medical attention caused the progressive spread of the infection to the point where it was life threatening by July 22, 1999. ( Pl.'s Ex. 3 P. 7 upper right corner) The first refusal/delay was for three (3) days ( July 5-8, 1999); the second refusal/delay was for seven (7) days ( July 8-15); the third refusal/delay was for seven (7) days (July 15-22). During each refusal/delay, plaintiff requested to see a dentist/doctor because he was in pain and had obvious indications of a serious dental/medical need. (See above arguments)

**Liability of defendant Velasco**

Ernesto Velasco was Director of the CCDC, and responsible for implementation of policies and procedures that determined how and when a detainee would be allowed to see a dentist. All defendants claimed in their Affidavits to have been aware of the polices and procedures. Such awareness caused the refusal/delay in providing dental/medical attention for plaintiff's progressive tooth infection, until the point that it became "life threatening." So, the policy and procedures as implemented by defendant Velasco, caused the constitutional (due process) deprivation, for which Velasco should be held liable.

**MOTION FOR SUMMARY JUDGMENT BY DEFENDANTS GUTHRIE, HINES AND BERSKY**

As their basis for Summary Judgment, the Cermak defendants claim that plaintiff has alleged constitutional violations within the context of medical malpractice. However, upon review of plaintiff's First Amended Complaint, it can be determined that

defendants' claim is without merit. (Pl.'s Ex. Counts III through IV)

Plaintiff's lawsuit alleges separate counts for violation of constitutional rights and for State medical malpractice. Contrary to defendants' claim, plaintiff does not allege negligence as the basis of his constitutional violation counts. Upon review, it is clear that plaintiff alleged facts for his claim of negligence that he did not raise as the basis for his claim of constitutional violation. (Pl.'s Ex. Counts III through IV) If the Court determines otherwise, Plaintiff requests leave to amend his Complaint to delete any such allegations.

The remainder of defendants' Motion for Summary Judgment does not raise any issue of fact or law that would entitle them to summary judgment as a matter of law, on any count. In fact, while defendants caption their motion as one for summary judgment, other than raising the above issue, defendants' motion appears to be a rehash of their previously filed 12(b) motion to dismiss. The Court ruled on that motion on August 1, 2002. ( Pl.'s Ex. P. 3-10)

## CONCLUSION

For the above reasons, plaintiff prays that defendants' Motion for Summary Judgment be denied in the entirety.

Respectfully submitted

Jaktely Whitley

By: /s/ Patricia Bender

Patricia E. Bender, Atty. For Plaintiff

Law Office of Patricia E. Bender
Attorney for Plaintiff
5415 N. Sheridan Rd. Suite 1411
Chicago, Illinois 60640
(773) 878-7148

*See Case File for Exhibits*